Chester J. Niscora, Esq. City Attorney, Lackawanna
You have asked whether, in the event of a vacancy in the office of mayor, the Charter of the City of Lackawanna or section 2-a of the General City Law governs the filling of the vacancy.
Section 2-a of the General City Law provides that in a city that elects a presiding officer of the legislative body (a) at large, (b) at the same time that the mayor is elected and (c) for the same term as the mayor's, the presiding officer fills a vacancy in the office of mayor for the remainder of the mayor's term (subd [1]).
The Lackawanna Charter, adopted in 1963, provides that the legislative body is to fill a vacancy occurring in the first or second year of a four-year term until a mayor can be elected to fill the balance of the term and to fill a vacancy occurring in the third or fourth year for the remainder of the term (§ 4.2). Technically, "year" for this purpose is January 1 to not less than 60 days before the general election for the first "year" of the term; is from 60 days before the election to 60 days before the next election for the second and third "years"; and from 60 days before the election to the end of the next calendar year for the fourth "year". Compare Public Officers Law, § 42(1), which uses September 20 as the latest date for requiring the filling of a vacancy at the next general election. We assume that if a vacancy occurred between 60 days before the election and September 20, section 42(1) would prevail over the Charter provision since that section is a general law.
Beginning with the 1979 election, one member of the Lackawanna legislative body "a Council President", has been elected at large, at the same election at which the mayor is elected and for the same four-year term (§ 3.1). Prior to that time, the council members elected a presiding officer (§ 3.5).*
There is a constitutional problem with the city charter provision. The Constitution provides in pertinent part:
 "The legislature shall provide for filling vacancies in office, and in case of elective officers, no person appointed to fill a vacancy shall hold his office by virtue of such appointment longer than the commencement of the political year next succeeding the first annual election after the happening of the vacancy" (Art XIII, § 3).**
The quoted portion of section 3 dates from 1846. The purpose of the restriction is to ensure that the voters choose who governs them. Thus, the power to appoint rather than elect is limited to the period that necessarily elapses before a regular election is held and a winner takes office. (See People ex rel. Wheeler v Townsend, 102 N.Y. 430, 439
[1886]; People v Keeler, 17 N.Y. 370, 376-7 [1858]). Today, an appointment to fill a vacancy runs to the end of the calendar year if the vacancy occurs prior to September 20 (Public Officers Law, § 42[1]); an appointment to fill a vacancy occurring after September 20 runs to the end of the succeeding calendar year unless the term ends in the earlier calendar year (Matter of Howard v Rockefeller, 15 N.Y.2d 927 [1965]). (This discussion does not apply to villages [Village Law, §3-302(1)].) Section 4.2 of the Lackawanna City Charter violates Article XIII, § 3 in its authorization to fill a vacancy in the office of mayor for the remainder of the term if the vacancy occurs less than 60 days before the general election in the second year of the mayor's term and not less than 60 days before the election in the third year of the mayor's term.
It is not clear how a court would construe section 4.2 if a vacancy occurred in the third "year" of a term. On the one hand, a court might preserve the constitutionality of the provision by reading it as if the intent were to permit filling vacancies in the manner specified by the Constitution. On the other hand, a court could say that section 4.2 must be read literally, which would mean that the charter fails to provide for filling a vacancy occurring in the first eight and two-thirds months of the third year of a four-year term. If there is no way to fill a vacancy in an elective office, the Governor in his discretion may call a special election at which the vacancy would be filled for the balance of the term (Public Officers Law, § 42[3]). Conceivably, a court could invalidate the entire section because of the infirmity in the "third" year.
How these charter sections are to be construed is relevant in considering the effect of section 2-a of the General City Law. That section was amended in 1980 to provide that the section is not applicable in a city with a charter provision in effect before November 5, 1973, if the charter provision provides that "a vacancy in the office of mayor is to be filled in [sic] at the next general election if the vacancy occurs before [September 20] and otherwise in [sic] the general election held in the following year" (L 1980, ch 191, § 1). To the extent that section 4.2 provides for the filling of vacancies, the Lackawanna charter would govern, for it was in effect on or before November 5, 1973. That the provision does not specify the September 20 cut-off date is not material, for that date is imposed by law (Public Officers Law, § 42[1]; Matterof Howard v Rockefeller, supra). That the council president was not elected at large until 1979 is not material, for the charter provision in effect prior to the 1973 election has not been changed. The change is in the method of designating the presiding officer of the council, not in the method of filling the vacancy in the office of mayor.
To summarize, Lackawanna was not subject to section 2-a of the General City Law prior to 1979 since it was not a city that chose its council president at large. From the effective date of the local law providing for election at large until the effective date of chapter 191 of the Laws of 1980, Lackawanna was a city within the mandate of section 2-a. Since the effective date of chapter 191, Lackawanna has been excepted from the coverage of section 2-a to the extent that section 4.2 is constitutional because that charter provision providing for filling a vacancy in the office of mayor was in effect before November 5, 1975. As for the constitutional infirmity, if a court construed section 4.2 literally and held that there is no charter provision governing the filling of the vacancy in the third "year", the court might also hold that there is no need for the Governor to call a special election because section 2-a offers a method of filling the vacancy in the absence of a constitutional method under the city's charter. Likewise, if a court invalidated all of section 4.2, the court would probably hold that section 2-a governed.
We conclude that a vacancy in the office of mayor of the City of Lackawanna is governed by section 4.2 of its charter to the extent that it is constitutional and not by section 2-a of the General City Law.
The Attorney General renders formal opinions only to officers and departments of the State government. This perforce is an informal and unofficial expression of views of this office.
* Apparently through oversight, this section was not amended.
** The section was amended in 1978 to exclude boards of education from the prohibition.